264 Cal.App.2d 197 (1968)
Estate of MARGARET S. BULLOCK, Deceased. MARY MARGARET FEWEL SMITH et al., Plaintiffs and Appellants,
v.
M. BRUCE GILREATH, as Trustee, etc., Defendant and Respondent.
Civ. No. 32129. 
California Court of Appeals. Second Dist., Div. One. 
July 22, 1968.
 Leon M. Cooper, Cooper, Tepper & Plant and Foster Tepper for Plaintiffs and Appellants and Petitioners.
 Hutchinson & Irwin and James A. Irwin for Defendant and Respondent and Real Party in Interest.
 No appearance for Respondent superior court.
 FOURT, J.
 In this proceeding a purported appeal from an order of the superior court, in probate, denying a petition for instruction in certain trusts, solely upon the ground of lack of jurisdiction, and a petition for a writ of mandate are consolidated for hearing and disposition.
 It appears that the last will and testament of Margaret S. Bullock was admitted to probate in the Superior Court of the State of California in Los Angeles County on May 29, 1952. The will included, as paragraph 11 thereof, a no-contest clause as follows:
 "Eleventh: If any devisee, legatee or beneficiary under this Will, or any person who would be entitled to share in my estate through intestate succession, shall in any manner whatsoever, either directly or indirectly, oppose, contest or attack this Will or the distribution of my estate hereunder, or seek to impair, invalidate or set aside any of the provisions of this Will, or shall aid in doing any of the above acts, then in that event I hereby give and bequeath to any such person the sum of One Dollar ($1.00) only, in lieu of any other share or interest in my estate either under this Will or through intestate succession."
 Several trusts were created under decedent's will, one of which was terminated upon the death of the beneficiary. There are now in existence trusts for the benefit of Mary Margaret Fewel Smith, John Bullock Fewel, Valerie Chappellet Sylvester and Felicia Helen Chappellet Pledger. There is also an Accumulation Trust. Loyola University of Los Angeles and Sisters of Charity of Albuquerque Hospital are named contingent beneficiaries of said trusts. The orders of distribution in the estate proceedings were entered on various dates, and none of the same contains the no-contest clause nor is any reference made thereto in any of the orders or decrees of *199 distribution.pursuant to the decedent's last will and testament and by the orders or decrees of distribution in her estate M. Bruce Gilreath was appointed as trustee of said trusts and the assets were distributed to him in that capacity. The amount of money involved has no particular bearing in the matter but suffice it to say that from the beneficiaries' point of view, involved are amounts totaling in excess of $6,000,000.
 Apparently there have been differences of opinion between the trustee and the beneficiaries throughout the years. In any event on or about March 29, 1966, the eleventh account current and report of the trustee was filed as to certain of the trusts. This account was filed after an order of court to do so was made upon the petition of the beneficiaries. The beneficiaries desired and ultimately (over extensive objection by the trustee) secured an order requiring the trustee to make available certain records. On about April 4, 1967, after hearings the eleventh account was approved with certain exceptions. The beneficiaries had charged in effect that the trustee had not kept complete records and books, that the accountings were inconsistent, that the trustee commingled assets of the trusts with his own personal funds, that it was necessary for the beneficiaries to engage an accountant to ascertain a correct account and other similar charges. The court concluded in effect that the beneficiaries were in part correct and ordered a surcharge in excess of $60,000 based in part upon the fact that the trustee used funds from the trust for his personal use and withheld such facts from the beneficiaries and the court. The beneficiaries are obviously of the belief that the trustee is not properly suited to be the sole trustee of trusts having assets principally in cash, in excess of $6,000,000. The trustee has appealed from that part of that order which surcharges him and as of this date the matter has not been briefed in this court.
 The beneficiaries petitioned the probate court for advice and instruction as to whether an action by them for the removal of the trustee, pursuant to the provisions of sections 2282, 2283 and 2233 of the Civil Code (which provide in effect that a trustee who has violated or is unfit to execute the trust, or who acquires any interest, or becomes charged with any duty, adverse to the interest of his beneficiary on the subject of the trust, may be removed at once), or on any other basis provided for by law, would bring into play the no-contest clause of the will.
 In short the beneficiaries want to get an instruction, in *200 advance, as to whether an action on their part to remove the trustee will bring down on them the disinheritance or in terrorem clause of the will under the circumstances. Their reason for wanting to know in advance of any such contemplated action is fairly obvious. They contend that the probate court has jurisdiction under the provision of Probate Code, section 1120, to give such an instruction. The trustee contends to the contrary. The trial judge ordered that the probate court had no jurisdiction to hear the matter and solely upon the basis of lack of jurisdiction and not upon the merits in any respect denied the petition. The beneficiaries have appealed from that order.
 There is grave doubt whether such an order is appealable. As a consequence the beneficiaries in a separate proceeding (# 32280) have also requested a writ of mandate to compel the probate court to exercise the necessary jurisdiction in the matter and to hear and determine the petition for instructions. Stipulations were entered into at the oral argument and consequently there are no procedural problems involved in the mandate proceeding and the sole question before this court now is whether the probate court has jurisdiction to hear and determine the petition under the circumstances of this particular case.
 The trustee seemingly asserts that there is no controversy between himself and the beneficiaries and therefore there is nothing to be determined in the probate court.
 Clearly in this particular case as heretofore stated there is an effort by the beneficiaries to have the trustee instructed with reference to their right of distribution. In brief the beneficiaries seek to have the trustee instructed that the bringing of an action in the superior court (Estate of Schloss, 56 Cal.2d 248, 254-255 [14 Cal.Rptr. 643, 363 P.2d 875]) to oust him will not adversely affect their right of distribution under the trusts because of the no-contest provision in the will. Nothing could be more important to the beneficiaries and to the trustee.
 [1] We are persuaded that the superior court, in probate, has jurisdiction under the circumstances to hear and determine a petition by the beneficiaries for instructions to the trustee that he may not discontinue to make distribution to them notwithstanding the no-contest clause in the will in the event they initiate a proceeding for the removal of the trustee from his office. *201
 Section 1120 of the Probate Code [fn. 1] has been liberally interpreted in the courts.
 There can be no question that there is a well-recognized public interest that estates of decedents be administered in such a manner that there can be no doubt with reference to the correctness of the proceedings and in a manner calculated to promote faith in the judicial system. Ordinarily trusts are made for the protection of the beneficiaries who may or may not be sufficiently informed and vigilant to manage large sums of money and conversely it would seem that trusts are not made for the benefit of trustees. Supervision of the trustee was contemplated in these trusts. Surely the testatrix and trustor did not mean thereby that to question the manner of administering the trust estate would constitute a forfeiture by a beneficiary. Surely the testatrix or trustor did not intend to inhibit the beneficiaries from seeking to have made proper accountings and distribution. She surely did not intend to participate in establishing a principle of law which would be dangerous in its effect and which would create a potential instrument of defense in the hands of a faithless or negligent fiduciary.
 Assuming that the beneficiaries did bring an action to oust the trustee, we think that in itself is not necessarily opposing, contesting, attacking or seeking to impair, invalidate or to set aside the will or any trust under the will. In other words it is difficult to see how under the circumstances any such action would or could thwart the will of the testatrix as expressed. No faulty execution of the will or any trust, no fraud or undue influence on the trustor is claimed or asserted. In any event it is fairly obvious that a beneficiary should not be terrorized into relinquishment of a valuable right by any threat of a forfeiture. On the face of the record it would seem that the beneficiaries have as an objective that the intentions of the trustor be fulfilled and that they get what was given to them--not to avoid the gift, but to protect it. We take a dim *202 view of any proceeding which has the effect of deterring any interested party from resorting to the probate court in proper cases. It is most important to maintain access to the courts with as little obstruction as possible, and not to stultify the judicial system. We are persuaded that a proper and straight-forward question under the circumstances should not be prevented nor should access to the probate court be impeded by any threat of reprisal. A forfeiture deprives a person of what he previously possessed (5 Williston, Contracts 770(3)) and the petitioners here apparently are simply asking the probate court to state or instruct whether a forfeiture of a valuable right will ensue if they bring an action in the superior court to oust the trustee. The beneficiary has a right to express a feeling of hostility toward and an opinion of the executor "in any way, at any place, at any time" he sees fit, without being vulnerable to a charge that he directly or indirectly aided in the contest of the will. (Lavine v. Shapiro, 257 F.2d 14, 19.)
 It has been held that if a beneficiary under a trust knows of a fraud being committed upon the court and if for fear of losing his legacy he silently stands by and accepts what is given him by the trustee, (although the wrong amount) he is morally a party to the fraud. (See In re Cocklin's Estate, 236 Iowa 98 [17 N.W.2d 129, 157 A.L.R. 584].) (See also Estate of Seipel, 130 Cal.App. 273 [19 P.2d 808].)
 In the case of Estate of Smith, 4 Cal.App.2d 548, 552- 553 [41 P.2d 565] it was stated with reference to Probate Code, section 1120: "We believe the language employed in the present section of the Probate Code was intended to broaden the jurisdiction of the probate court so as to give that court jurisdiction over practically all controversies which might arise between the trustees and those claiming to be beneficiaries under the trust. ... (Italics added.)"
 "Respondents take the position that section 1120 of the Probate Code 'only authorizes proceedings set in motion by the trustee' and that the only proceeding which may be set in motion in the probate court by one claiming to be a beneficiary is a proceeding under section 1121 of the Probate Code to compel the trustee to render an account. We find no such limitation in the language of the first portion of said section 1120 conferring jurisdiction upon the probate court. While the remaining portions of said section relate to certain proceedings to be instituted by the trustee and section 1121 relates to proceedings to be instituted by the beneficiary to compel the trustee to render an account, we do not believe *203 that these provisions are to be construed as excluding other types of proceedings instituted by either the trustee or the beneficiary for purposes described in the first portion of said section 1120. Respondents claim that appellant's remedy is to institute a proceeding to compel the trustee to render an account, or to object to any account filed by the trustee, or 'by bill in equity in a separate proceeding'. We may assume that appellant might have pursued some or all of said remedies, but it does not follow that the probate court was without jurisdiction to hear and ...." (Italics added.)
 Also in Estate of Munson, 86 Cal.App.2d 67, 70 [194 P.2d 70], it is set forth: "A beneficiary of a testamentary trust is also entitled to petition the court for instructions to the trustee. (Estate of Smith, 4 Cal.App.2d 548, 552, 553 [41 P.2d 565].)"
 And in Estate of De La Montanya, 83 Cal.App.2d 322, 328 [188 P.2d 494] the court stated: "Jurisdiction is given under Probate Code, section 1120 which provides in part: 'When a trust created by will continues after distribution, the superior court shall not lose jurisdiction of the estate by final distribution, but shall retain jurisdiction for the purpose of ... passing upon the acts of the trustee. ... The trustee may also petition such court, from time to time, for instructions ...' (See Estate of White, 69 Cal.App.2d 749 [160 P.2d 204]; Estate of Marre, 18 Cal.2d 184 [114 P.2d 586]; Willson v. Security-First Nat. Bank, 21 Cal.2d 705 [134 P.2d 800].) The language is broad enough to give jurisdiction over all controversies arising between a trustee and a beneficiary where the method of operation or the good and sound judgment of the trustee is involved. (Estate of Smith, 4 Cal.App.2d 548 [41 P.2d 565]; Estate of Smead, 12 Cal.2d 20 [82 P.2d 182].) In the present case the trustee decided to sell the property; one of the beneficiaries objected. It made little difference whether the petition was a petition to 'conform' or one for 'instructions.' " (Italics added.)
 In Estate of Bissinger, 60 Cal.2d 756, 764 [36 Cal.Rptr. 450, 388 P.2d 682, 19 A.L.R.3d 506], the court stated: "Although 'The probate court has no general equity jurisdiction. ... It has the power ... to apply equitable and legal principles in aid of its functions as a probate court.' (Security- First Nat. Bank v. Superior Court (1934) supra, 1 Cal.2d 749, 757 [10] [37 P.2d 69]; see also Estate of Charters (1956) 46 Cal.2d 227, 236 [5-6] [293 P.2d 778], and cases there cited; Estate of Eilert (1933) 133 Cal.App. 409, 415 [2] *204 [21 P.2d 630].) Moreover, 'the language employed in ... section [1120] of the Probate Code was intended to broaden the jurisdiction of the probate court so as to give that court jurisdiction over practically all controversies which might arise between the trustees and those claiming to be beneficiaries under the trust.' (Estate of Marre (1941) 18 Cal.2d 184, 187 [1] [114 P.2d 586]; Estate of Smead (1938) supra, 12 Cal.2d 20, 24 [3]; Estate of Traung (1962) supra, 207 Cal.App.2d 818, 828 [5] [24 Cal.Rptr. 872]; Estate of Smith (1935) 4 Cal.App.2d 548, 552 [1] [41 P.2d 565].)"
 "* * *"
 "And more recently it was held, in Estate of Traung (1962) supra, 207 Cal.App.2d 818, 828-829 [6- 8] that in the course of supervising a testamentary trust the superior court sitting in probate was empowered to order that, because of a change of circumstances, the trustees should pay to one of the beneficiaries his share of the trust corpus despite the fact that conditions attached by the testator to such payment (carried into the final decree of distribution to the trustees), had not been satisfied. In so holding, the court pointed out (p. 828 [5]) that the probate court's authority to permit the trustee to deviate from terms of the trust upon a proper showing of changed conditions was assumed in Estate of Keet (1940) supra, 15 Cal.2d 328, 334 [4] [100 P.2d 1045], and assumed, arguendo, in Estate of Van Deusen (1947) supra, 30 Cal.2d 285, 292- 293 [3b, 6] [182 P.2d 656]. (See also Estate of Loring (1946) supra, 29 Cal.2d 423, 433 [11] [175 P.2d 524]; Keyston v. Keyston (1950) 96 Cal.App.2d 550 [215 P.2d 754].) Further, said the court (pp. 828-829 [6- 8] of 207 Cal.App.2d), 'In our view, the broad jurisdiction of probate courts over testamentary trusts was intended to include the power to modify the trust in proper cases. ... Such power, we think, is necessarily incident to the judicial supervision which the section seeks to achieve. Among other things, the statute confers authority upon the court to pass upon the trustee's acts. The probate court must have the power not merely to measure the trustee's acts by the testator's directions but also determine whether the directions should be adhered to inflexibly in all instances. Complete and effectual supervision, we think, results from the court's power to determine, as the court exercising general equity powers does, whether in the light of existing conditions, the primary objectives and dispositive plan of the testator is being subserved or frustrated by his administrative directions. This power is of *205 the essence of the enforcement and administration of trusts. If it is not given full play, judicial supervision is nullified by its own inertia." (Italics added.)
 The reasoning set forth in Howard v. Bennett, 53 Cal.App.2d 546, 547, 548 [127 P.2d 1012] is of importance here. In Howard the determination was in a probate matter as to whether the court had jurisdiction in a substantially similar situation. We are persuaded that the provisions of section 1120 of the Probate Code are sufficiently broad to cover and include what is here requested. In Howard the court stated: "This is the sole question necessary for us to determine:"
 "Where a superior court sitting in probate can give full relief, does it have exclusive jurisdiction to construe the terms of a will in an estate which it is administering so as to deprive the superior court in general of jurisdiction to entertain a declaratory relief action for the purpose of construing the terms of said will?"
 "This question must be answered in the affirmative. Section 1060 of the Code of Civil Procedure, which provides for a declaratory relief action, was not designed to deprive the superior court sitting in probate of its exclusive jurisdiction to construe the provisions of a will and determine the rights of the parties thereunder. [Citations.]"
 "* * *"
 "In the case now before us the superior court sitting in probate was in a position to settle and determine all of the rights of the parties and it was not necessary for plaintiff to resort to the civil side of the superior court."
 It is difficult to perceive how any good could be accomplished by refusal to hear the petition in question in this case and relegating the parties to another action in the superior court for a determination. Counsel for the trustee at the oral argument expressed the fear that unless the code section is strictly interpreted there will be a substantial expansion of the jurisdiction of the probate court resulting in innumerable beneficiaries in effect nipping at the heels of every trustee asking for instructions on every conceivable situation and thereby overruning the probate court. We only decide that under the facts and circumstances of this case the beneficiaries are entitled to have heard in the probate court their petition for a determination as to whether they can safely proceed and the trustee can be instructed that he cannot interfere with their right to distribution if they proceed to bring an action for his removal in the superior court. *206
 The County Counsel of Los Angeles County appeared in this case and stated in effect that the superior court, his client, takes no side in the matter and entered into a stipulation that the cause might be determined upon the briefs already on file.
 [2] We think the order made is nonappealable and that the appeal therefrom should be dismissed. (Case No. 32129.)
 We further think that the respondent superior court (probate) (case No. 32280) has refused to act in a matter properly brought before it and that mandamus should issue.
 It is therefore ordered that a peremptory writ of mandamus be issued to the respondent superior court in probate, requiring the court and a judge thereof to hear and determine the issues raised by the pleadings filed in connection with petitioners' application as heretofore mentioned herein. (Our case No. 32280.)
 The appeal in our case No. 32129 is dismissed.
 Wood, P. J., and Lillie, J., concurred.
NOTES
[fn. 1] 1. Section 1120 of the Probate Code: "When a trust created by a will continues after distribution, the superior court shall not lose jurisdiction of the estate by final distribution, but shall retain jurisdiction for the purpose of determining to whom the property shall pass and be delivered upon final or partial termination of the trust, to the extent that such determination is not concluded by the decree of distribution, of settling the accounts and passing upon the acts of the trustee, of authorizing the trustee to accept additions to the trust from sources other than the estate of the decedent, and for the other purposes hereinafter set forth. ... The trustee may also petition such court, from time to time, for instructions as to the administration of the trust ...."